# IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ILLINOIS
### EASTERN DIVISION

NORMAN H. GOLDMAN,                        )
                                          )
      Plaintiff,                   )
                                          )
  v.                                      )
                                          )  No. 10 C 8160
MARSHALL M. ATLAS, SALTA GROUP,           )
INC., and LAJO, LTD.,                     )
                                          )
      Defendants.                  )
                                          )

## MEMORANDUM OPINION AND ORDER

Plaintiff Norman H. Goldman filed suit against defendants Marshall M. Atlas, Salta Group, Inc. ("Salta Group") and Lajo, Ltd. ("Lajo") alleging two claims: (1) breach of contract; and (2) an accounting. Defendants have filed a motion to dismiss the complaint. For the reasons given below, that motion is denied.

This lawsuit stems from a January 1, 2005 contract (the "Agreement") between the parties. Pursuant to the Agreement, Goldman agreed to provide his services as a real estate tax lien buyer to the defendants. In all, Goldman bid on and obtained, on behalf of the defendants, approximately 198 tax sale certificates at annual tax sales held in various counties in Illinois. In consideration for Goldman's services, defendants agreed to pay Goldman a 30 percent share in the net proceeds derived from the tax sale certificates.

By way of background, plaintiff's complaint explains the following: the Illinois Property Tax Code provides, in part, that after a judgment for a delinquent tax, a particular county shall offer the property for sale. During such sale, bidders offer "penalty bids" as potential purchasers of the properties subject to the sale. Once a bidder's penalty bid is accepted, the bidder is issued a "certificate of purchase," or as defined in the Agreement, a "tax sale certificate." The holder of the tax sale certificate may ultimately obtain title to a particular property through a tax deed. Property sold under the Property Tax Code, however, is subject to a redemption period. In other words, the original property owner has a right to redeem the property sold at an annual tax sale. Should a property owner redeem the property, it is the holder of the tax sale certificate who is entitled to the redemption amount. The holder of the tax sale certificate receives the title to the property through a tax deed after the applicable redemption period ends.

To survive a Rule 12(b)(6) motion, "the complaint need only contain a 'short and plain statement of the claim showing that the pleader is entitled to relief.'" *EEOC v. Concentra Health Servs., Inc.*, 496 F.3d 773, 776 (7th Cir. 2007) (quoting Fed. R. Civ. P. 8(a)(2)). The facts must provide the defendant with "'fair notice of what the . . . claim is and the grounds upon which it rests.'" *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (quoting

*Conley v. Gibson*, 355 U.S. 41, 47 (1957)). The plaintiff need not

plead particularized facts, but the factual allegations in the

complaint must be enough to raise a right to relief above the

speculative level. *Id.*

As an initial matter, I reject the argument presented on

behalf of the Salta Group and Lajo that they are not parties to the

Agreement. According to the complaint, Atlas controls Salta Group

and Lajo. In addition to Atlas, both Salta Group and Lajo are

listed as parties in the first paragraph of the Agreement and are

listed as parties in the signature block of the Agreement as well.

*See* Agreement at 1 ("This Agreement is made as of the 1st day of

January 2005, by and between Marshall M. Atlas/Salta Group, Inc.

and Lajo, Ltd., hereafter referred to as ("MMA") and Norman H.

Goldman, hereinafter referred to as ("NHG")"); *id.* at 3 (listing

"Marshall M. Atlas/Salta Group, Inc., Lajo, Ltd." in the signature

block). Further, the Agreement makes clear that Atlas, Salta Group

and Lajo are collectively referred to as "MMA," and the Agreement

refers to "MMA" throughout. Thus, I conclude that these corporate

entities were parties to the Agreement.

Count I asserts two breaches of the Agreement: (1) "fail[ure]

to pay [Goldman] all amounts due with regard to the tax sale

certificates bid on and purchased; and (2) "fail[ure] to provide

Mr. Goldman with an accounting." The Agreement states that,

> 1. NHG shall receive thirty percent (30%) of the net
>    proceeds from any real estate that MMA acquires

from Tax Deeds resulting from the above mentioned [Tax Sale Certificates] or thirty percent (30%) of the net proceeds from any settlement or from any transfer, assignment or settlement of any issue by MMA from the above mentioned [Tax Sale Certificates] or Tax Deeds. Such net proceeds shall be paid to NHG within fifteen (15) [sic] of receipt by MMA.

2. Net proceeds shall mean any funds, assets, or any other valuable consideration received by MMA, after reimbursement to MMA of all reasonable costs of acquiring the Certificate, subsequent real estate taxes paid and posted on said Certificate, any costs posted to the Certificate, tract searches, reasonable attorneys' fees, reasonable real estate or additional costs paid to obtain the Tax Deed, any reasonable costs incurred in the sale of the real estate . . . NHG shall receive 30% of all payments and/or rents given to MMA for use of the real estate on a quarterly basis.

. . .

4. For income tax purposes, MMA shall keep all books and records of redemption on the [tax sale certificates] and/or real estate in Exhibit A and MMA will give a report to NHG on the above upon request.

Agreement at 1-2. In his complaint, Goldman states that, "On information and belief, some of the tax sale certificates have been previously redeemed by the particular property owner or other interested party, and others have been turned into valuable tax deeds. Mr. Goldman is currently entitled to thirty-percent of the net proceeds for each respective redemption amount and each tax deed issue." Compl. ¶ 26. Defendants argue that these allegations do not allege a breach of the Agreement because "redemption

amounts" and tax deeds (on their own) do not fit within the boundaries of the Agreement's paragraph 1.

At this stage, I conclude that Goldman has stated a breach of contract claim against the defendants based on any amounts defendants received through redemption. The pertinent language in the Agreement states, "NHG shall receive . . . thirty percent (30%) of the net proceeds from any settlement or from any transfer, assignment or settlement of any issue by MMA from the above mentioned [Tax Sale Certificates] or Tax Deeds." According to the complaint, redemption occurs when the property owner pays money to the tax sale certificate holder. This describes a "transfer" of money.[1] *See* Black's Law Dictionary (9th ed. 2009) (defining "transfer" as "any mode of disposing of or parting with an asset or an interest in an asset, including a gift, the payment of money . . ."). Defendants' motion to dismiss this first part of the breach of contract claim is denied.

---

[1] Having considered defendants' arguments, I am not convinced that my conclusion should be altered. Defendants argue that because the Agreement lists "any transfer, assignment or settlement of any issue by MMA" as events which trigger defendants' duty to pay Goldman, I should conclude that "redemption amounts" were specifically excluded. Here, however, that rule of contract interpretation is not necessary as the act of redemption itself, which involves the payment of money, is a "transfer." In addition, I reject defendants' strained argument that the amount of money defendants received via redemption would not be considered "funds," and thus covered by the definition of "net proceeds" in the Agreement. Clearly, monetary payments are "funds."

Next, Goldman alleges that some of the tax sale certificates have been turned into valuable tax deeds, and that he is entitled to payment based on these tax deeds. Defendants respond that their receipt of tax deeds alone is not a triggering event under the Agreement. According to defendants, Goldman would only be entitled to payment if defendants received "net proceeds" from these tax deeds. Defendants claim plaintiff has the expertise to investigate public records to determine the ultimate disposition of the tax deeds. Because the complaint does not allege that defendants have actually received net proceeds from the tax deeds, defendants argue that there is no claim.

This part of the breach of contract claim is inextricably linked to the other breach alleged by Goldman. Under the Agreement, the defendants are obligated to keep "all books and records of redemption on the [tax sale certificates] and/or real estate in Exhibit A" (where Exhibit A is a list of all the properties for which Goldman obtained a tax sale certificate) and defendants must give a report to Goldman upon request. Goldman claims he has made such a request and defendants have refused. Thus, Goldman has put defendants on notice of the claim against them, and the breach of contract claim relating to defendants' failure to provide a report to Goldman survives the motion to dismiss.

In light of the fact that defendants are obligated to provide Goldman with a report on all the properties (which would indicate whether defendants received any "net proceeds" for their tax deeds), I am not convinced by defendants' argument that Goldman must do this investigation himself. Had defendants provided the report, Goldman would know the ultimate disposition of the tax deeds, and whether the defendants ever realized "net proceeds" from them. I will allow Goldman's breach of contract claim based on the tax deeds to survive the motion to dismiss. Through discovery, Goldman will undoubtedly get the information he is due under the Agreement, and the parties are free to raise this issue again at summary judgment.

Finally, in Count II, Goldman sufficiently pleads an accounting claim. Defendants' motion to dismiss is denied.

**ENTER ORDER:**

_____
**Elaine E. Bucklo**
United States District Judge

Dated: March 25, 2011